All right, our next case is number 20-14247, Wendall Hall v. Peter Merola et al. Mr. Valencia. Good morning, your honors. May it please the court. Patrick Valencia, court appointing counsel for Wendall Hall. Your honors, the claims in this case were close across the board from the very beginning of this litigation, and close claims are not supposed to be dismissed at the motion to dismiss stage, especially when there's a pro se plaintiff involved and especially when he hasn't yet had a chance to amend his complaint. Now, there are several issues in this case, your honors, but if I may, I'd like to begin with what we propose would be the cleanest way through this case, and that relates to Mr. Hall's pro se claims against defendants Watson and Wright. The dismissal of the First Amendment and Eighth Amendment claims against these defendants was a quintessential Bank v. Pitt abuse of discretion, and it calls for this court's attention to allow Mr. Hall his chance to amend those claims for the to give a pro se plaintiff like Mr. Hall notice of his deficiencies, and then a meaningful chance to address those deficiencies. A pro se plaintiff should receive at least one such chance, even if judgment has already been entered, and even if the plaintiff never asked for such chance. Wendell Hall never received that chance. His claims against defendants Watson and Wright were dismissed at the motion to dismiss stage without Mr. Hall ever getting a chance to address any deficiencies. Let me go backwards, I guess. The district court dismissed those claims based on Heck v. Humphrey, right? Yes, your honor. Okay. If we line up with the courts that say that Mr. Hall was at the gate of his cell, and the toilet that he was alleged to be standing on and touching the sprinkler was at the back of his cell, and so he was at the front of the cell when he was sprayed, and that fact does not contradict anything that's in the disciplinary report. So if we look at docket 11-1, which is the disciplinary report itself, it establishes only four things. It's very minimal. It establishes first that Mr. Hall was standing on the toilet, second that he was touching the sprinkler, third that he disobeyed a verbal warning, and fourth that there was a reactionary use of force. But similar to this court's recent case in Sconiars v. Lockhart, it doesn't establish the sequence of some of these things. It doesn't establish also how many times Mr. Hall was sprayed, what the duration of those sprays were, and Mr. Hall was never allowed to address the supposed Heck v. Humphrey deficiencies in those claims. And so this court actually doesn't even need to reach the Heck split because Mr. Hall has not had a chance to even address these claims. The court didn't address counsel. I'm sorry to interrupt, but so your point would be that it's possible that even if we assumed that even if we accepted the validity of the disciplinary ruling, that is that he was tampering with a sprinkler, it wouldn't matter because he could still have an excessive force claim. He might still be able to modify or amend his complaint to explain why spraying him with pepper spray to stop him from tampering with the sprinkler was still excessive force. Is that what your point is? That's exactly correct, your honor. And he didn't get that chance to amend to address those deficiencies. But what do we do with just this? We were talking about sequencing. What do we do with the fact of the just sort of procedural sequencing of this case that none of this ever arose until after the Heck bar was sort of deployed against him? The district court dismisses based on Heck, and then there's this, you know, suggestion that perhaps he might amend to fold in a different constitutional claim. Well, your honor, I'll take that last point first, which is this wouldn't be a different constitutional claim because on the on the face of his complaint, he does allege that excessive force was used against him. So all right, so let me just stop you there. So I want to make sure I understand this because I thought the first time that anything was alleged about excessive anything was in the opposition of the motion to dismiss. Your honor, if we look at Mr. Hall's complaint at docket nine, page 14, right there in his complaint, our allegations that he was defendants Watson and Wright used excessive force against him. So the notion that the first time anything relates to excessive force was brought up was in the opposition isn't correct. Okay, so point point me again. I'm just going to take notes here. The complaint, what does it say in the paragraph that you're referring to? Just read it to me. Yes, your honor. Let me just pull it up right here quick. And you said it's yeah, document nine. Yes, your honor. Docket nine, which is the operative complaint here. Yeah. And Mr. Hall there alleges docket nine page. I'm just trying to find the page here, your honor. Yes, docket nine, page nine to 10, I'm sorry, nine to 10. He alleges that defendants violated his rights by, quote, gassing him without any justification or sufficient reasons to wantonly cause him pain or injury or to retaliate against him. So that's his first amendment claim. And then he says, quote, or by using excessive force against him. And that's docket nine, page nine to 10. That language appears in counts one, three, and four. And then he says, quote, and six. And so there are two theories here of his eighth amendment claims against the defendants. It's both this first amendment retaliation theory. And it's also this eighth amendment excessive force theory. And that's a quintessential claim that isn't supposed to be barred by heck. Well, your honors, it's not just the eighth amendment claim that can get around heck here, or that isn't subject to heck. It's also this first amendment claim. And it's why this court doesn't need to reach the heck split itself. Because Mr. Hall can plead, can amend his allegations to say that this spraying occurred when he was standing up at the gate. So he's prepared to allege that maybe he was standing on the toilet touching the sprinkler. But that's beside the point, because he was sprayed at the gate. And that was excessive force. And those officers, for all the reasons that are in his complaint, they didn't like him. And so they don't challenge the facts that are logically necessary to the disciplinary report. Because again, the disciplinary report only establishes those four things. And beyond those four things, everything else is in clay here. And the heck inquiry is about not challenging facts that are logically necessary. And the sequencing here isn't going to be present in the disciplinary report. And so that's why this court can just assume for the purposes of this case that one way or the other on the heck split. But Mr. Hall, because of bank versus pit, should be able to go back to the district court and amend his allegation or his complaint for the first time in this case. If we do get to the heck question, how do you get around footnote 10 in heck? Yes, your honors. Well, footnote 10, as quite a few courts have said, is dicta in that case. So the facts in heck were that there was an inmate who was trying to bring a 1983 claim. And it impugned that inmate's conviction. It doesn't address the situation here, which is somebody who's been released from custody. And so five circuits have said that that is pure dicta. Yeah, I get that. But you probably know, we've got this famous or infamous line of cases that says they're something like there's dicta, there's dicta, and then there's Supreme Court dicta. Yes, we don't we don't casually dismiss it. And I mean, you know, I totally get it. Like, you know, as a lawyer, I litigated this very issue in your shoes. So I understand sort of the nose counting and Spencer versus chemo and Justice Ginsburg renunciation of footnote 10, but it just seems like we are kind of stuck. Your honor, as this court has said, most recently in Tegan, this is an open question here. But if we want to discuss that footnote 10, and how it might apply here, we have to look at the purposes of heck and what the Supreme Court was trying to do there, which was the most important point there was an inmate should not be able to challenge the duration of their confinement, and then end up with a civil judgment in one hand that says, you know, your sentence should be five days, and a criminal judgment that still says five years. And here, Mr. Hall is not in custody. And so there are different purposes at play. And so heck does not apply here. It's, it's a different inquiry. And Mr. Hall is challenging a disciplinary violation, not a conviction. And so any there's no remedy for him, because the result of that disciplinary violation, your honors, was a loss of 20 days of, you know, good time or game time. He served his full sentence. There's there's nothing to overturn there. So I noticed that in Muhammad versus close, which is a 2004 opinion of the Supreme Court, the Supreme Court seemed to indicate that this was still an open question. It said members of the court have expressed the view that unavailability of habeas for other reasons may also dispense with the heck requirement. This case is no occasion to settle the issue. Does that suggest that the footnote that is dicta in heck? Although there's dicta, and there's dicta, right, that this might not be in the heavy dicta category? Yes, Your Honor, I would completely agree. Because here, the Muhammad v. Close dicta on dicta shows that the court, you know, you know, isn't leaning towards applying to somebody who doesn't have access to habeas at this time. It was very clear in heck, that the inmate there could have gotten habeas at the time that that case was pending. Mr. Hall doesn't have that ability here now. And so that's an important fact that distinguishes this case. Now I turn your attention to the second issue. Yes, Your Honor. Isn't that really mooted by the fact that the jury returned a verdict in favor of Mr. Marola? I mean, why doesn't that move that whole issue? Your Honor, it doesn't move the issue for two reasons. First, similar to Mr. Hall's claims against defendants Watson and Wright, he also hasn't ever had a chance to amend his complaint. And then that legal error carried through and became an evidentiary error that was baked into the instructions. But, but the I mean, during the trial, he was able to talk about his other his physical manifestations. And it didn't really go to the question, whether or not he had a did not go to the question of whether or not Marola had withheld the food. So why does that? Why did why is that material in this specific instance? Yes, Your Honor. It's material because you're exactly right that he was able to put in his testimony documenting these allegations. But the point is that when he went to put that in and have the complaint conform to his evidence under Rule 15b, the district court itself said, well, these claims do raise the issue of whether there's more than minimal injury. And that was the key sort of the linchpin of Mr. Hall's entire theory of liability. He didn't have alternative theories of liability. His main story was they did X and it caused me all these injuries. And so when you when you undercut him and take out the Your Honor, I see my time is complete. May I finish the answer here? Yes, go right ahead. Okay. His whole main theory of liability here was that he was subject to these acts that what is on docket 260, page 70 to 79. Those are minimal injuries under this court's case law of Nolan Isbell. Minimal injuries is just scratches and bruises. He alleged far more than that. So then when the district court instructs the jury, contrary to what the district court found earlier that same day, that there was more evidence of more than minimal. The district court then instructs the jury and says, by the way, this isn't minimal. This is a minimal injury that contradicts Mr. Hall's evidence that comments on evidence by the district court's own terms, contrary to the evidence, and it undercuts his entire credibility. His main piece of direct evidence was his testimony. When you undercut his credibility, you're throwing up his entire theory of liability here. That's why this liability finding is infected. And that's why the liability finding doesn't move out this issue, Your Honor. All right, Mr. Valencia, thank you very much. You've saved your time for rebuttal. Mr. Esri. Good morning, Your Honors, and may it please the court. As you've heard this morning, Mr. Hall had two sets of issues that he brought before the district court, and they give rise to two independent sets of issues before this court. Like Mr. Valencia, I'm happy to start with the heck issues unless the court has other questions on the instructional issues. And on the heck issues, I think Mr. Valencia started this morning by making the argument that Mr. Hall had pleaded his way around heck. And in his briefs, I only read him as making an argument that he pleaded around heck on the Eighth Amendment claim. I now take him to be saying that he pleaded around heck on both the Eighth Amendment and First Amendment claims. But for either, we don't think that he successfully pleaded around heck, nor do we think that there's any reason to grant leave to amend at this point. Now, just to set the stage, I think we all agree on how heck applies to Eighth Amendment claims. An Eighth Amendment claim will only be barred by heck when the premise of the claim necessarily challenges the fact necessary to a conviction or sentence. And just to make that slightly more concrete and give a stylized example, if a plaintiff is convicted of assaulting a police officer and then brings an excessive force claim, heck will bar the claim if the plaintiff alleges that he did nothing wrong and was nonetheless attacked by the officer. That claim necessarily challenges the conviction because the plaintiff says he did nothing wrong and the conviction says otherwise. On the other hand, if the plaintiff says, yes, I attacked the officer, but he responded with too much force, then heck does not bar this claim. We think, however, that Mr. Hall quite clearly only pleaded the first theory. And if you'll indulge me in just walking through what happened at the trial court, I think we start with the amended complaint, which as Mr. Valencia noted, is docket entry nine. And there he says that Watson and Wright threatened to gas him for being a black man and filing too many writs. He then says that they did this and then said, quote, you knew this was coming because of your past lawsuits. And he specifically says that he was not tampering with the sprinkler system. Mr. Hall continued to make those claims in opposition to his motion to dismiss. Counsel, I'm sorry to interrupt, but and I understand what you're saying. I think he absolutely did plead, as you've described, but I think in the alternative and he used the word or he did plead using excessive force against plaintiff. And he repeated that in a couple of different places in the amended complaint. I'm looking at page 10 of ECF number nine from the district court, and I can see it twice right there in that single page alone. Why shouldn't he have been given an opportunity to amend his complaint at least once to argue the excessive force claim? So I think there's two questions there, and I'm going to try to answer them in turn. The first is whether the or excessive force clause stated a claim itself. And then the second question is, assuming it didn't state a claim, should he be granted leave to amend? So let me just start with whether that stated a claim that survived and our answer to that is. But also remember he's proceeding pro se. We have to liberally construe his complaints when you answer the question. I absolutely understand that, and I'll do my best to take that into account when I answer the question. So as to whether he pleaded a complaint in the first instance, Twombly and Iqbal say that we throw away legal conclusions and look to the facts as pleaded. That rule applies just as much to pro se litigants as to any other litigant. This court justified it yesterday in Ballard to say that we throw out legal conclusions in a pro se complaint and look to the facts. And so if you look to the facts as pleaded, every single fact that he alleges, including in his affidavit that he puts in in opposition to the motion to dismiss, is that he was doing nothing wrong. He was not tampering with the sprinkler system in itself, that he was not failing to follow orders, and that this use of force comes out of nowhere. So I think we throw away the legal conclusion. They use excessive force. We look to the facts, and all of the facts are heck barred. Now that leaves the question of whether he should have been granted leave to amend. And I take it that Mr. Hall's theory now is that all pro se litigants are entitled to one free amendment, but that is not the rule. It has never been the rule under Bank. Bank says that there are a number of reasons why you can deny leave to amend, even to a pro se litigant. I think a good example of this is Bryant v. Dupree, which is 252 F. 3rd 1161, which was cited under Bank, and says that district courts can deny leave to amend where there has been, quote, undue delay, bad faith, or dilatory motive. And here, following the heck dismissal, Mr. Hall tried to amend, and the district court rejected the amendment as being brought in bad faith. If you look at docket entry 43 at 4, the district court explained, quote, this court will not grant leave to amend, so the plaintiff may completely change the character of his complaint or alter his allegations in an attempt to circumvent the court's decision. Defendants assertion that there has been undue delay and bad faith making this request for leave to amend is well founded. But how long afterwards did he request leave to amend? So he requested leave to amend, I think, a week after the district court's decision on the motion to dismiss. How can that be untimely? So I think it can be untimely, but I don't want to die on that hill, I think our better argument is bad faith. So let me try and answer untimely, but then I want to move to bad faith. I think it's untimely, just given the facts of this case. So the way that this unfolded is that Mr. Hall gets to federal court, immediately amends. A motion to dismiss is filed. Mr. Hall responds to that motion to dismiss, saying, I don't think this complaint should be dismissed. Here's an affidavit that makes all the claims in the complaint. And then he repeatedly tells the district court, judge, please rule on this motion. I think my claim survives. I'd like you to rule. I'd like you to rule. And then it takes about a year to rule. So I think he does wait about a year. And you could say that that's untimely. I think our better argument, frankly, is bad faith. Because what happens in this case is that Mr. Hall is an experienced litigant. He's pleaded so many federal complaints that the page on his form that says, how many federal complaints has he filed, took more than the page to fill out. And he said he couldn't remember all the complaints. He then fills out a federal form complaint that says, state with as much specificity as possible, end quote, the facts giving rise to your claim. That's docket entry 9 at page 14. He sees the motion to dismiss, doesn't amend in response to it. In fact, tells the district court in a signed affidavit, yes, everything that I said in my complaint is what I am going to allege. And only once the district court rules does he suddenly say that he forgot the key facts that he would allege that would allow his complaint to survive. And I think on that record, the district court was well within its discretion to conclude that Hall was acting in bad faith. And again, I don't take Mr. Hall to be saying anything to the contrary. Instead, in his reply brief, he says that there has been no evidence of bad faith in this record. He just does not talk at all about the district court's conclusion at docket entry 43 that there was bad faith. So I think if we look at the heck question, I don't think that he pleaded an excessive force claim that would survive heck, because all of his allegations in the complaint are that he was not tampering with the fire sprinkler system. I think that's the heck barred version of his claim. And there's no ground to get to amend because Mr. Hall does not even challenge the district court's bad faith finding. And even if he did, I think the district court was well within its discretion in finding bad faith. And so I think that that leaves the court in the position of deciding whether heck applies once Mr. Hall has been discharged. And our primary submission on that point is that the issue was decided in heck itself. As the court recognized, footnote 10 expressly deals with the situation and says that a prisoner's discharge does not mean that heck is inapplicable. Judges, I'm sorry. It looked like you were about to ask a question. Well, yeah. I mean, I've got lots of questions about this issue, frankly. I mean, one of them, I guess the most fundamental is this. So heck begins. I think the first line of heck, maybe the last line of heck, effectively says this case arises at the intersection of these two great statutes, 1983 and habeas. So that's clearly what the case is about, like what to do with the broad language of section 1983 when there is some conflict with the habeas statute. Here, because the guy's been released, there's clearly no conflict with the habeas statute. So why aren't we just by sort of deduction left with the broad language of section 1983, which clearly gives this guy a claim? I just don't really understand by reference to what are we refusing to enforce the plain language of section 1983, if not the habeas statute? Right. So I think that you are right that heck comes up in a line of cases that are attempting to draw the line between habeas and 1983. I think the issue is that the heck majority does not view the case as a reprise of Pricer v. Rodriguez. So Pricer v. Rodriguez says, look, when a claim could be brought in habeas or 1983, we're going to say that it needs to be brought in habeas because that's the more specific statute, right? That's one way that you could have decided cases like this. That's not the way that the heck majority decides the case. So it recognizes that the case, as your question recognized, is brought at the intersection of habeas in 1983, but it resolves it not by saying that it's a statutory conflict case, but by looking to the common law. And in using the common law to resolve the question, heck is actually talking about the elements of bringing a section 1983 act claim in these circumstances. And that's why heck reaches beyond the actual conflict. And if you just indulge me, if you look at page 486 of the opinion, I think the court could not have been clearer about that. It said, quote, we hold that in 1983 act must prove that the conviction has been overturned on appeal by habeas or by expungement. But that very sentence you quoted says to get relief on a claim that a conviction or a sentence was illegal, an excessive force claim does not necessarily call into question the validity of the conviction or a sentence. We have cases that say that one of them being Dyer versus Lee from 2007. So an excessive force claim doesn't necessarily call into question the validity of a conviction or a sentence for the underlying conduct, right? So I agree with that in the general terms, not all excessive force cases will call into question the conviction or sentence. I think some of them will. And there have been cases around the circuits that we set in our brief where courts conclude that an excessive force claim does call into question the conviction or sentence or is extended by Edwards, the prison disciplinary proceedings. And I think that that occurs when a necessary element of proving the claim is going to be that there was, you know, no basis for the force, even if they find that the force was justified. And so I think this case is one of the cases where the excessive force claim calls into question the conviction or sentence. I think that does call into question the conclusions of the prison disciplinary proceeding, which concluded that Mr. Hall was tampering with the fire safety sprinkler system that he denied and did not follow orders to cease doing so. And therefore that force was used. And I just add, Mr. Hall today says that the disciplinary proceedings did not speak to sequencing, but I on the toilet tampering with the fire sprinkler system got a warning to stop and the warning was to no avail. If he was standing at the gate and had stopped, the warning would have been to avail. And so I think this is one of the cases where an excessive force claim does question the predicate of the prison disciplinary system. So I think we're squarely within HAC. And then the question is, does HAC continue to apply? And I think it does based on both its reasoning and holding, but I don't need to die on the hill of HAC's holding being clearly on point here, because I think even if you think that this is an open question, the one thing that is quite clear about HAC is that it adopts the common law to resolve disputes like this. And so I think the starting place for this inquiry is the common law. And the striking feature about this case is that Mr. Hall has no common law argument whatsoever. He does not- The common law of what? Of malicious prosecution, Your Honor. So HAC says that when your claim challenges a conviction or sentence or again is extended by Edwards, a prison disciplinary proceeding that results in the loss of game time, that is analogous to a malicious prosecution claim. And so we are going to use- But counsel, sorry to interrupt. If it's an excessive force claim and it's not, let's just say that in the alternative, he has alleged or is arguing a claim that even if he did these things and he's not calling into question the disciplinary charge or finding, it's still excessive force. In that situation, I mean, the reason that it's analogous to a malicious prosecution claim in the other situations is because you have to find that the action terminated favorably in favor of the person who's bringing the action. But you don't have to find that for an excessive force claim. That's never been part of the common law. And so why does it matter there? So I think it depends on what you're viewing as the excessive force claim. So I think if his excessive force claim is, I was doing nothing wrong. The officers used force against me for no reason. I think that does challenge the conviction or sentence. That's the Auckland case that we cite in our brief. There's a number of cases from around the country that reached that conclusion. If you think that he's pleaded a second excessive force claim, the claim that, yes, I was tampering with the fire safety sprinkler, but nonetheless, the officers used too much force against me. We agree that claim is not heck barred, but that claim was never brought. He never alleged that. We don't think that him saying or excessive force is sufficient to allege that under Twombly v. Iqbal, the judge rejected as being brought in bad faith his amendment to try and clear that deficiency. And so I don't think it's in the case, but if it is, I think it's plainly barred by immunity because this court's case law recognizes that officers can use a chemical agent to get compliance with their orders. That's all he would allege if he says just or excessive force. If you think it's just a freestanding claim that they used too much force, I think that's the type of claim that's plainly barred by qualified immunity. So I think if you think he pleaded his way around heck, I think he pleaded his way straight into immunity. There's no further questions. I see that my time has expired. All right. Thank you very much, Mr. Valencia. Thank you, Your Honor. The first point I would like to make is opposing counsel said that Mr. Hall's brief didn't claim that he pleaded his way around heck or anything. But if you look to pages 43 and 53 of the opening additional brief, it's clear right there that we were alleging there were two theories of the of this eighth amendment claim and that Mr. Hall should get a chance to amend on that. The second point, Your Honors, is my friend on the other side wants to point to bad faith and delay again, just like the district court. But that's part of the issue of why we're here. Those weren't exceptions to bank in bank itself. Those weren't exceptions recently in this court's case and in 2018. The exceptions are utility or if the inmate or the plaintiff made it clear they didn't want to amend their complaint. Neither of those apply here. And if we actually look at the district court's order docket 43, which is what said Mr. Hall's attempt to amend was done in bad faith. The reasons that he said it was in bad faith is because Mr. Hall quote also seeks to because the court has determined that he is limited to seeking nominal damages. But that's the point of bank is that Mr. Hall wants to enhance allegations to address noted supposed deficiencies. That's what bank allows for a pro se plaintiff like Mr. Hall at the time to be given his notice of deficiencies and then a meaningful chance to address them. That's exactly what he was doing. That's not bad faith. That's not delay. As one of your motion to amend after that the order dismissing his claims, he followed it seven days after that order hit the docket and Mr. Hall was in prison at the time and he still filed this within seven days. There's no delay. It wasn't bad faith. This was only one year into the case that the other side would like to point maybe to this longevity of this case. But these these claims were dismissed in 2016 and he filed this case in 2015. There wasn't delay. Mr. Hall was trying to move this now on the. Yeah, can I ask you a quick question about a hack? What about in response to my question, you know, sort of on what basis are we ignoring the plain language of Section 1983, if not for habeas, Mr. Esrae responds to common law. And, you know, it's true that the court in heck does say that a malicious prosecution analog kind of claim, which this one would be, had a favorable termination requirement at common law. What about that? Your Honor, I push back on the premise there that this would be an analog to a malicious prosecution claim. This is a quintessential excessive force claim. Well, but I think for that, for the purposes of my question, we've got to assume if you've got a true blue excessive force claim. Yeah, I was tampering with the sprinkler and they beat me into a bloody pulp. Nonetheless, that I think even Mr. Esrae says, yeah, that one is not heck Bart. He might he disputes that it was pled, but it's not heck Bart. So for purposes of my question, we're within a more conventional claim where either it's not an excessive force claim at all, or it's an excessive force claim that is so bound up with the, I did nothing wrong premise that it is subject to heck. And then the question is, you know, I had this sort of, you know, sort of snappy question about like, well, if not the habeas statute, why are we ignoring the plain language? And Mr. Esrae says, well, the court in heck said that you've got to is the scenario that you hypothesize that Mr. Esrae and you think that would clearly survive heck is exactly what Mr. Hall would like to amend to say. And he hasn't had the chance to on the second point about the common law, heck and McDonough and Thompson and the cases that the other side would sites to support that the common law here would foreclose this claim only deal with scenarios where the plaintiff is an inmate. And so there it's excuse me, McDonough and Thompson deal with scenarios where there was no, there was never a conviction and heck was where the plaintiff was an inmate here. That doesn't, those same concerns don't apply here. Mr. Hall has been released while this case was pending. There's no concern that he's challenging the duration of his confinement. There's no concern of having dueling judgments here. This disciplinary violation took 20 days away from him. He served the 20 days and he would like to amend to address this claim that's been pending since 2016. Okay, let me just ask you, I'm so sorry. I know that I've carried you beyond your time, but this is helpful to me. So are you telling me, and I'll go back and look for myself, but you're, you're saying that the, the, the common law precedents to which the heck court pointed as evidence of this favorable termination requirement, independent of our modern habeas statute, nonetheless involved people who were then currently prisoners? Yes, your honor. That's my understanding. And that's what, um, the heck majority was focused on was an inmate trying to circumvent or do what they call a quote and end run around habeas. And there's no end run around habeas here. Um, habeas is not available. And, uh, my friend, the other side does not dispute that. Okay. Thanks. That was helpful. Thank you, your honors. Mr. Valencia. We want to thank you for we really, really do appreciate your help and your assistance. And for both of you, thank you very much for the help this morning. Thank you, your honor.